Good morning, Your Honors. May it please the Court, Jeremy Kroger for the Office of the Federal Defender on behalf of Susan Tomsha-Miguel. I'd like to start, with the Court's permission, with the First Amendment issue. The first part of Section 912 prohibits impersonations, whether or not those impersonations are done with an intent to defraud, or whether or not they're even done with any intent to receive anything of value whatsoever. A government defends this broad statute by reading into it a requirement of an intent to deceive. Isn't that just what we did in Perelman, and isn't that a perfectly appropriate way to read this? Otherwise, what difference does it make that a person impersonates? Well, Your Honor, the intent to deceive in Perelman was based on the specific statutory language in that statute. And this Court based it on the words knowingly in that statute, as well as the words colorable imitation thereof. Well, doesn't impersonation carry a similar, a similar inference? Because if I go on stage as an actor playing a congressperson, I think you would say there's an actor playing a congressperson. You wouldn't say they're impersonating the congressperson. Doesn't it carry the sense all by itself of an intent to deceive someone into believing that you actually hold the office that you're pretending to hold? And, Your Honor, I think that there's two answers to that question. The first is that the word impersonation is actually not found in the statute. The word there is pretend, which I think is consistent with the actor or with a child or with the educational simulation. But why shouldn't we read it in a way that avoids constitutional infirmity? Well, Your Honor, I think that that goes to the second question, and that's this. There used to be an intent to deceive in the statute. The statute was written differently. The Supreme Court read the defined the language intent to defraud as including an intent to deceive. Almost immediately after that, Congress then took that language out. But deceiving and defrauding are two different things. Defrauding suggests that you're going to try to bilk the other person out of something of value that they wouldn't give you otherwise. Deceiving means fooling them, but maybe they won't part with any money as a result. So they're different. And the fact that defraud is gone, does that necessarily mean that deceive is gone? And in this case, it does, Your Honor, because the Supreme Court explained what intent to defraud means in this particular statute. And intent to defraud in this statute requires deceit first, and it requires an intent to convince someone else to take an action that they wouldn't otherwise have taken. And what happened here is the Supreme Court explained what intent to defraud meant. It said it requires an intent to deceive. And then Congress almost immediately thereafter removed that language from the statute. It's a fundamental principle of statutory interpretation that courts shouldn't read into a statute language that Congress has expressly removed from a statute. And so it's our contention, Your Honor, that when one considers what the Supreme Court defined an intent to defraud to mean, and they defined it as requiring deceit, the fact that Congress immediately then took that language out, this Court and no court should then read that language back into the statute. And with respect to Perelman, that was based on the particular statutory language in that statute, and that's language that's not present here. And, Your Honor, then without an intent to deceive, we're dealing with a statute that clearly is overbroad from a First Amendment perspective. We're dealing with a statute that reaches satire, parody. It reaches comedy. It reaches educational simulations. And with respect to either strict scrutiny or, frankly, intermediate scrutiny, I don't know that that distinction matters if the intent to deceive is not in the statute. And I think quite plainly it's not. I think it's particularly apparent when one considers the first part of the statute in conjunction with the second part of the statute. I think that shows the breadth. The first part being the part where you're falsely pretending to be acting as an employee under the authority of the United States versus the part where you're obtaining a thing of value, is that what you mean? Yes, Your Honor. Both require the pretending to be an employee of the United States. The second part requires that you're seeking or actually obtaining a thing of value. And so we're dealing here with only the first part of the statute. And I think the breadth of that is shown by the fact that it is specifically dealing with situations where the person is pretending to be a Federal employee and isn't seeking anything. And to the extent there's a ---- Let me ask you this. And I know you don't agree that this is possible. But assuming, for the sake of this question, that the first clause requires a specific intent to deceive, is it still violative of the First Amendment in your view, or is it not? I would concede, Your Honor, that if you read into the statute an intent to deceive, then no, it is not violative of the First Amendment. I think that Perelman is on all fours with respect to that. However, that addressed a different statute and was based expressly in the language of that opinion on the language in the statute at issue of Perelman. But, yes, I would answer the Court's question in the affirmative. But my point being that particularly when viewed in light of the second part of the statute, we are dealing with a statute that is extremely broad that doesn't require criminal intent. And because it juxtaposed with the second part, it is so broad, it doesn't require someone to seek to receive anything, it doesn't require fraudulent conduct, it is particularly strikingly in contrast with the First Amendment. Turning, if I may, to the sufficiency of the evidence, the government was required to prove two things here, to establish a violation of the first part of section 912. They were required to establish that Ms. Thompson McGill pretended to be a Federal employee, and then that she took some act under the guise of that, that pretending to be a Federal employee. And so she wrote a letter, which she then delivered or had given to someone else. So why isn't that a sufficient act? I mean, if she just said in the office, gee, I think I'll be a congressional aide today, you know, she hasn't done anything, but she prepared this document that was false and gave it to someone. And, Your Honor, the government argued in front of the district court and repeatedly to the jury that the act was the act of faxing the letter to her client, Mr. Garcia. But the case law is clear. The act has to be an act taken under the guise of the impersonated individual. And here, that act, and I think the government has conceded in its opposition, that the act of faxing the letter to Mr. Garcia was an act that Ms. Thompson McGill took not under the guise of an impersonated individual. That would have been consistent with the forgery, with the ruse. She was saying, look, I received this letter. This is me now, Mr. Garcia. This is Ms. Thompson McGill. Look at this letter that I received. That act was not taken under the guise of an impersonated individual. The government, I believe that's not true. But preparing the fake letter was. And if she had prepared it and put it in her own drawer and just thought it was a personal joke that she hadn't communicated to anyone, I think the government would have a hard time sustaining a prosecution. But once she puts it out in the world for the use of someone else, to his potential benefit, it seems to me that she's completed the act of falsely taking an action in the guise of being an employee of the United States. Well, Your Honor, the act of faxing the letter was not an act done under the guise of a particular employee. I think that. But preparing the letter was. And then causing it to be put in someone else's hands. Why isn't that a sufficient act? Because the causing it to be put in somebody else's hands has to be an act taken under the guise of an impersonated employee. So if you put something in the mail, that automatically now makes it the mail doing  Or I don't understand that. Well, the way this particular, and Ms. Thompson-Miguel explained what was going on in her head and the way that this particular scheme worked is she addressed a letter to herself and began, Dear Ms. Thompson-Miguel, refer to Mr. Garcia, the alleged victim, the victim as your client. And then, as herself, sent it, faxed it from her own fax machine to Mr. Garcia. Now, had she mailed the letter directly to him under the guise of a federal employee, that might have been a different case. But she didn't do that. What we have here, and this is not to say that this allows her to escape punishment. If this case had been correctly charged, if this case had been charged, for example, as a violation of 18 U.S.C. 701, then she would have been guilty. It would have been a misdemeanor. But that would have been consistent with the evidence in this case. Here, and the reason I think the government was having so much trouble with this is that the act of sending the fax was not done under the guise of an impersonated persona. And that is something that the government, as I read their opposition, has conceded. And their response then is to ask the Court to now broaden the reading of the statute and to read it in a way that it has not been read before and to say that, well, the impersonated persona, but it can be an act consistent with the impersonated persona or in furtherance of it. But you have yet to answer my question whether the preparation of the letter is an act. Because by preparing it, she is pretending to be both the sender and the recipient. Understandably. So I guess the reason that sending it or giving it to someone else makes a difference is that without that, there's no intent to deceive. So if she had just prepared it and thought, gee, this is a fun joke, and put it in her drawer, there would be no deception to anyone else. And so it's the sending of it creates the element of deception. But why isn't the actual act the preparation of the letter? And, Your Honor, there's a couple answers to that question. The first is there are, under the Ninth Circuit model jury instructions, and as this jury was instructed, there are only two elements. There is not a third element of deception. So there are two elements. One is pretending to be a Federal employee. And the second is taking some act under that guise beyond just the mere pretending. If we're saying that both of those were satisfied with the writing of the letter, then had she taken the letter and ripped it up or had she put it in her drawer and never sent it, she would have been every bit as guilty of this offense as had she taken some further action in furtherance consistent with the assumed identity. That can't be what Congress intended, that you could write a letter to yourself and rip it up and you violated this statute. But if we're saying writing the letter by itself was the entire offense, well, then the offense was completed at the point in which she wrote the letter. Another problem with that is that this is not what the government urged the jury to convict on. And if she was indicted under that theory, that the writing of the letter was both the pretending to be a Federal employee and the overt act, then the government can't urge the jury to convict only on a different theory. That's a constructive amendment or variance, which is addressed in footnote 1 of my opening brief. Turning, if I may, Your Honor, to the prosecutorial misconduct argument. This Court in 2011 in the United States v. Sanchez outlined the restrictions on what prosecutors can argue in opening statement and in summation. And they set forth a number of restrictions, and one of those was prosecutors are prohibited from urging the jury to convict based on the social ramifications of an acquittal. Another restriction that this Court has placed on prosecutorial arguments is prosecutors are not allowed to impugn the integrity, to impugn the intentions of defense counsel. Here, the prosecutor in this case did both of these things, did so repeatedly throughout this case, did so in opening statement, in closing statement, and in summation. And it was particularly prejudicial given some specific details of this case. The first is this. This was an extremely short case. This was a half-day trial. It lasted, I believe, a total of three hours. The second, I think ---- Well, the facts really aren't in dispute. So it seems to me that either it is a crime or it isn't a crime. But there really wasn't a dispute about what happened. Well, Your Honor, I would respectfully disagree with that. The government argued in closing that when Ms. Thompson-McGill faxed the letter to Mr. Garcia, she did so as impersonating a Federal employee. They expressly said this both in their closing argument and in rebuttal, that the act of sending the letter was an act taken under the guise of an impersonated individual. And we argued that, no, that's not the case. The act of sending the letter was an act of impersonation. That's a legal argument. I guess what I was trying to get at was that there wasn't any real factual dispute that the letter existed and that she prepared it and that she faxed it. The underlying factual questions were not seriously disputed. But I would argue, Your Honor, that it was for the jury to determine whether or not she was acting as an impersonated individual when she faxed the letter. That's correct. I guess I'm not being very clear. I just am wondering if the prosecutor made improper statements in view of the clarity of the underlying facts. I'm not sure what difference it made. So I guess that's a question about prejudice. And, Your Honor, I do think that the jury very well could have been confused as to that factual question that was presented expressly, in fact, to the jury. I mean, I expressly asked him. I said, look, the question is this. Was she acting as an impersonator? Was she impersonating somebody when she sent the letter? That's the question that's being presented to you. And it was a question that was presented both by the prosecutor and by myself. And the reason that this was so prejudicial is that because she did, as Your Honor points out, she did confess to writing the letter. Then the arguments about the social ramifications of acquittal, well, they went to her whether or not she was guilty of this particular offense charged. In other words, even if this offense was mischarged because she had confessed to writing the letter, the jury was told of the consequences to her actions irrespective of whether or not she did the crime. And beyond that, because it was, as Your Honor points out, a somewhat subtle distinction, when the prosecutor turned and says he's trying to trick you, he's trying to confuse you, he's trying to distract you, when the prosecutor repeatedly said that to the jury, it was particularly prejudicial in this doctrine of Yale because then the jury is not going to pay attention to that somewhat subtle distinction. Thank you, counsel. Your time has expired. Thank you. We'll hear from the government. Good morning. May it please the Court. Edward Sullivan for the United States. Starting with the sufficiency argument that was the focus of the primary appellant argument, the trial evidence presented was straightforward. It was overwhelming, and it was largely uncontested. The evidence reflected that Ms. Thompson McGill falsely impersonated a fictitious legislative aide to Congressman Cardoza, and then she acted as such when she passed along that letter to Recline, Mr. Garcia. Your Honor, I'm not sure the acted as such part was uncontested or that the evidence was overwhelming that she acted as such. The evidence seems to be largely undisputed. We got that part. But when she faxes this letter, is she acting as an officer of the United States or employee of the United States? The position of the government is that she was acting in her actual identity on behalf of the assumed identity of Mr. Garcia. And if I could just take a minute. So I'm not sure the position of the government. So you're saying that the portion of the statute that requires not only that she falsely attuned or pretended to be an officer or employee, but also that and acts as such, you're saying the act as such component of the crime is accomplished when she faxes the letter to Mr. Garcia? That's correct, Your Honor. Okay. I can just explain briefly that when she prepared the false letter, had she simply taken that letter and put it into her file, as Your Honor alluded to earlier, then that likely would not be charged as a violation of Section 912. It might be a violation of another statute, however. If she had taken the letter and simply sent it directly to the client by the United States Mail or by Federal Express or another courier, then I don't think there would be a debate that she's acting as such. There's a false impersonation followed by an overt act that's consistent with the assumed identity. Likewise, had she taken the letter and sent it to the client in care of, let's say, Mr. Garcia's assistant, again, I don't think there would be a debate that there is a false impersonation followed by an act consistent with the assumed identity. But what she's doing is she's sending a forged document to her client. She forged the document. Correct, Your Honor. She's, it seems to me, she's sending it to him in her own name. When she forged the document, she was forging it in the name of a fictitious employee, but I have trouble understanding that when she forged the forged document in her own name to her own client, that she's acting as the employee that the letter pretends sent that letter. Your Honor, in the schema, she has created it. She is no different than the U.S. mail. She is no different than the common courier. The letter, which is at page 276 of the record, reflects that it was in care of her. The letter was always meant for Mr. Garcia's separate job. Well, but it was addressed to her. She's the name. It was Dear Miss, and I'm having trouble pronouncing my name. It was not addressed to Mr. Garcia. It is addressed to her, but if you look at the top of the letter, it is clearly directed to Mr. Garcia. It is in care of her. Well, it is and it isn't. It says Garcia care of, but it specifically names her as the addressee. But bear in mind, Your Honor, and I understand your point, but bear in mind, she's the one constructing the scheme. Well, of course she is. Yeah, sure. Anyway, the facts here are pretty much what they are. Nobody's fighting about what happened. And the facts show that this plan was not a simple one. It was actually fairly intricate. She's the one creating it. No, no, no. It was pretty simple. She writes a fraudulent letter and she forwards it to her client. I understood, Your Honor, but what I meant is she's the one creating the false persona, but she's the one making sure that that false persona gets communicated to the client. Why? Because as she confessed to the FBI, she wanted to mislead her client. Of course. The reality is she didn't. This is not what happened. Let me give you a hypothetical. Let's say that she calls her client and says, I have contacted the Congressman's office, indeed a letter signed by Mr. Dalton, and they're looking into it. Crime? I think you have fraud and deceit, but most likely not a violation of Section 912. Why? Because she just said, I have just received a letter sent to me by Mr. Dalton in the Congressman's office, and he says the following. And listen, we're taking care of it. So why is that different from what happened? The difference being that in the facts as presented by the actual case here, she is a weigh station. Her only job is to get this letter which she wants. But she's a weigh station for something that she has herself created, a letter. That's correct. And it's an issue. What if she had actually done this, sent the letter to herself, and calls him, doesn't send the letter, but calls him and says, you know, I have just received a letter from Mr. Dalton that says they're looking into it. Is that a crime? As presented, if she actually typed up the letter and sent it to the letter saying she has it in her possession, and she doesn't send it to Mr. Garcia, but she says I've received a letter from Mr. Garcia, does that violate this statute? I would say it still does, because she's acting as such. There's an additional act consistent with the assumed identity. The point being to the statute that you're trying to falsely impersonate to cause the victim to take some sort of step that they might not otherwise have taken absent of the decision. I understand that what she did was bad. I'm not trying to say, hey, this is terrific. This is not a crime. But I'm trying to fit it within the meaning of the words of the statute and I'm having trouble doing that. I understand, Your Honor. The reality is there's not a lot of case law on this particular set of facts, but that's why I think it does not. It seems to me, it seems to me, I guess I'm – there may be other problems with holding this, but it seems to me that as soon as this letter is created and signed, she has acted as such, because she's taken letterhead belonging to a congressman and pretended to be the – a nonexistent aide to the congressman. So it seems to me that the act of as such is completed at the time this letter is created and signed on this letterhead, because it's false and she's done this act in furtherance of it. Now, if it had never been communicated, there may be other problems involved and if there has to be an intent to deceive and other things. But I don't know why that isn't the act. The government took the position that, at the trial below, that the false presentation was the creation of the letter itself, not the act, the act being the faxing of the letter, and that's how it was pled in the indictment. The case law generally shows that there just can't be a repetition of the same false pretense, that there has to be some additional step, some overt act that's consistent with the assumed identity. It's our position, going back to Judge Fletcher's point, that there is an additional step here that is consistent with the assumed identity, because, again, she – the fax is presented, she's no different than the U.S. male. Her only goal is to get that – Right, because it's addressed actually to Garcia in her care, and she makes sure that it gets to Garcia. And we also argue on a sufficiency standard. So the question is, in viewing the evidence in a light most favorable for the government, we respectfully submit that a rational juror could have reasonably concluded that the government had proved the essential elements beyond a reasonable doubt. So on the First Amendment issue, do we have to read in deceit? I'm sorry? Do we have to read in deceit into the statute? So that dovetails both with his intent to defraud argument as well as the First Amendment. What the case law clearly shows is, after the Lebowitz decision and after the amendment to Section 912, the cases looking at it have concluded repeatedly, with the exception of the Fifth Circuit, that intent to defraud is presumed. Meaning, if the government establishes the other two elements, showing that there's a false impersonation followed by acting as such or in the false role, demanding or receiving money or a thing of value, then the intent to deceive is baked in, for lack of a better term. It's presumed. And so when getting to a First Amendment argument, intent to deceive is already presumed inside the statute. So much like Judge Graber's decision in Parliament, this should be intermediate scrutiny. And as conceded by the appellant on page 17 of the reply brief, if intermediate scrutiny applies, then he has conceded that the First Amendment argument fails. Just to take a step backwards, however, the Court need not even get into that type of in-depth analysis, because the Supreme Court in ALGRA has made very clear, all nine justices indicated that Section 912 is the type of statute that survives First Amendment scrutiny. Her only response to that point is, well, the Supreme Court was talking in dicta when it was referencing 912. She's technically correct in that the constitutionality of that particular statute was not under review at the time. But what the Supreme Court justices were doing in ALGRA was comparing and contrasting 704B to other statutes, including 912, all of them identifying 912 as a statute that survives constitutional muster. This Court has repeatedly stated that such prophetic dicta should be afforded great weight and deference, and that deference should be all the more warranted here, given the unanimous viewpoints of all nine justices. This is also a particularly improper challenge on First Amendment grounds. She's conceding and not bringing an as-applied challenge, most likely because she recognizes that her own fraudulent conduct doesn't warrant First Amendment scrutiny. Instead, she's bringing a facial over-breath challenge, which is strongly disfavored. Turning briefly to the intent of the fraud, after the amendment in 1948, this Court, on two separate occasions, in amendment and Bush fraud, indicated that the government doesn't have to plead or prove a specific intent of the fraud. In response to that, and recognizing that there's governing precedent on this, Appellant argues that there's a split in the circuit law. Six out of seven circuits have reached conclusions very consistent with the Ninth Circuit. The Wiltz decision on the Third Circuit, in particular, explains how the intent of the fraud is presumed in the statute. Turning to his last argument, prosecutorial misconduct, the argument is two-fold. First, Appellant's counsel just argued that comments were made by the prosecutor that sought to disparage counsel in such an egregious and prejudicial manner as to warrant reversal of the conviction. Well, counsel is an experienced attorney who also handled the underlying matter, and the comments must not have been so egregious as to warrant an objection at the time. So this Court is looking at it from a plein air perspective. The most likely reason he didn't object in real time is because the comments, when read in context, are completely appropriate and proper. The comments were aimed at counsel's trial strategy and his defense tactics. It wasn't an attempt to impugn counsel or to question his ethics or to attack his personal character. Even if the Court finds that the comments were somehow improper, we submit that the comments were not prejudicial at all, let alone the substantial prejudice level that would require, would be required under a plein air standard. Lastly, turning to the final point of appealing to the juror's emotions and alluding to social consequences of the verdict, we submit that the prosecutor did not do that either. Rather, the prosecutor, in the context of explaining evidence that was admitted at trial, also talked about what the statute related to, the purpose of the statute, the intangible rights that are governed by a relatively arcane statute. Let me ask you to backtrack a little bit. I've got the letter in front of me. What I don't have, and you may be able to help me, what evidence do we have as to what the defendant did or said in connection with transmitting it to Mr. Garcia? The evidence at trial in the record showed that she faxed it. That was based in part by the special agent's testimony who indicated that he went and interviewed Ms. Thompson-McGill. She initially concealed and denied the scheme. She eventually confessed to faking the letterhead, signing it. Right. No, I got that part. But do we have, like, a cover sheet on the fax? Do we have any testimony as to what she might have said to Mr. Garcia accompanying the fax and so on? I don't believe there was testimony as to what was actually communicated or said to Mr. Garcia. Did she call him ahead of time to tell him that the fax was coming? I don't believe so. What came out at trial, however, is that while he was deceived, he was deceived in a manner that she didn't expect. She thought that the letter would calm him down so that he would stop calling her repeatedly. Instead, it deceived him to the point where he ended up calling Congressman Cardozo's office directly. It turned out to be quite a bad strategy. But what I'm trying to figure out, what do we know, if anything, about what she might have said to him or written to him in connection with faxing this letter? And you say you don't know anything. I don't believe there's anything in the record on that particular point. Okay. What did come out through the agent is that the original copy of the letter was destroyed, thereby showing that she was likely trying to conceal the scheme. Yeah, yeah. No, I mean, okay. Thank you. And for the reasons stated today as well as in our briefs, we respectfully ask that the conviction be affirmed. Thank you. Thank you, counsel. We appreciate very much the arguments of both of you. They've been very helpful today. And the case is submitted.
judges: Graber, Fletcher, Paez